## GREEN B. TAYLOR v. J. W. EVANS ET AL.

### Delivered May 8, 1897.

**1. Preference of Creditors—Fraud—Constructive Notice—Attorney.**

Knowledge by an attorney for plaintiffs in attachment, acquired before his employment, that the attachment debtor was delaying the making of a general assignment contemplated by him in order that such plaintiffs might obtain a preference by their attachments, is not chargeable to the latter unless such matter was again brought to the attorney's mind after his employment and before the running of the attachment, although a communication of such knowledge by the attorney to his client would not have been a breach of professional confidence.

**2. Charge of Court—Harmless Error.**

Error in charging the jury on the question of actual notice, on the part of attachment plaintiffs, of fraud by which they are preferred in the payment of their debts, is harmless to one attacking the attachment, where the evidence conclusively shows that there was no actual notice on the part of the attachment plaintiffs.

APPEAL from Fannin. Tried below before Hon. E. D. MCCLELLAN.

*Richard B. Semple*, for appellant.—1. Notice to the agent is notice to the principal, where such notice comes to the agent while he is assisting in consummating a transaction which is for the benefit of the principal, though such agent is not then employed by the principal, provided the business in which the agent gains such information and that in which he is employed by his principal are one transaction. Bass v. Peevy, 22 Texas, 295; Taylor v. Evans, 29 S. W. Rep., 172; Givens v. Taylor, 6 Texas, 315; Morris v. Lindauer, 54 Fed. Rep., 23; Weeks on Attorneys, sec. 170; Dodge v. Littler, 73 Texas, 323; Van Hook v. Walton, 28 Texas, 73; Hudson v. Morris, 55 Texas, 595; Kauffman v. Robey, 60 Texas, 311; Irvine v. Grady, 85 Texas, 123; 2 Pom. on Eq. Jur., sec. 672; Bump on Fraud. Conv., p. 204; Wade on Notice, sec. 689; Snyder v. Partridge, 32 Am. St. Rep., 137.

2. When the evidence in a case involves the issues of both actual and constructive notice, and the court in the other charges defines the effect of notice to defendants and their attorney upon the issues in the case, without distinguishing between actual and constructive notice, it is error in its only charge to limit such definition to that of constructive notice. Machon v. Randle, 66 Texas, 282; John v. Battle, 58 Texas, 596; Vardeman v. Edwards, 21 Texas, 737.

*G. W. Wells* and *Hale & Hale*, for appellees Cole and Morgan.—Notice to an agent is not notice to a subsequent principal, if the agent, when he received such notice, was not the then agent of the principal, and was

not acting for him in the transaction in which he received the notice, but subsequently became the agent in a different transaction; and in such case the notice or knowledge of the attorney in this case can not be imputed to the person who became his principal at a subsequent date, and who had no actual knowledge of the facts, when, also, the agent with whose knowledge the principal is sought to be charged did not reacquire knowledge or such notice after becoming the agent or attorney of the principal sought to be charged. Loan Agency v. Taylor, 88 Texas, 47, 49; Kauffman v. Roby, 60 Texas, 308; McCormick v. Wheeler, 85 Am. Dec., 393; Martin v. Jackson, 27 Pa. St., 504; Hood v. Fahnestock, 8 Watts, 491; Houseman v. Association, 81 Pa. St., 262.

*Thomas P. Steger* and *Lusk & Thurmond,* for appellees J. W. Evans and bondsmen.

FINLEY, Associate Justice.—This cause has been before this court before, and is reported in 29 Southwestern Reporter, 172. It was originally instituted in the District Court of Fannin County, Texas, on November 1, 1888, by Green B. Taylor against J. W. Evans, sheriff of Fannin County, and his bondsmen, and T. U. Cole and R. B. Morgan, to recover damages for the conversion of a stock of merchandise owned by Hall & Nicholson, an insolvent firm, on October 15, 1888.

The following facts are alleged in the petition as grounds for a recovery: On October 15, 1888, Hall & Nicholson were doing business as merchants in the town of Honey Grove, and had on hand a stock of goods worth $18,000. They had been insolvent many days prior thereto. During the period they contemplated making a general assignment under the insolvent act, and on October 15, 1888, carried their purpose into execution. In their deed of assignment they made appellant, Green B. Taylor, their assignee, who qualified under the statute on October 16, 1888. T. U. Cole, cashier of the First National Bank of Honey Grove, held a debt against Hall & Nicholson for $1272.04, and R. B. Morgan also held a debt against them for $1540. Both sued upon their debt on October 15, 1888, and employed George W. Wells, Esq., as their attorney. Several days prior to October 15, 1888, Hall & Nicholson agreed with Morgan and Cole that they would withhold the delivery of their deed of assignment until Morgan and Cole should procure the issuance of attachments upon their respective debts and levy the same upon said stock of goods, and thereby they could secure the full payment of their debts. Wells advised Hall & Nicholson how to prepare the proper papers for making their assignment. Hall & Nicholson, under advice of Wells, prepared their deed of assignment in blank, adopted all the preliminary steps toward making said assignment, and as soon as Morgan and Cole effected the levying of their attachments on said stock of goods, they signed, acknowledged, and delivered said deed of assignment to Taylor. Appellee Evans was then sheriff of Fannin County, and Sparger and other appellees were his bondsmen. As sheriff, Evans levied said attachments of Morgan

and Cole, and seized and sold said goods by virtue thereof. Hall & Nicholson did all the said acts in contemplation of their said assignment, and the same were so adjusted that with the aid and assistance of said Morgan and Cole, and acting under advice of and in concert with their said attorney, Wells, a preference was given said Morgan and Cole in the payment of their debts, in violation of the assignment law of Texas. These goods were afterward sold under order of the court, upon petition of said Evans in said attachment suits, and the proceeds of the sale were appropriated to the payment of said debts, costs, etc. Plaintiff, though he qualified as such assignee, never received any part of the proceeds of said sale. Plaintiff prayed for judgment against Evans, his bondsmen, and Cole and Morgan for the $18,000, the value of the property converted, interest and costs.

Defendant Evans and his bondsmen vouched in a large number of attaching creditors and their bondsmen on indemnifying bonds, and prayed for judgment over against them on said bonds in case plaintiff recovered judgment against them. They also pleaded demurrers and general denials.

The attaching creditors, Patty & Joiner and R. F. Scott, pleaded also, that since the institution of this suit they had compromised their suit as to them with plaintiff by paying plaintiff on the part of Patty & Joiner $250, and on the part of R. F. Scott $200. Plaintiff pleaded non est factum to said compromises.

The parties by written agreement withdrew from the jury the trial of every issue except as to which ones of the levies of attachments upon the goods were valid; and submitted every other issue to the court. The jury found the following attachments and levies valid, to wit: Those of T. U. Cole, R. B. Morgan, C. H. Gordon & Co., Joseph Simon & Son, and Goldsmith, Klaw & Co. The jury found the following attachments and levies invalid, to wit: Those of Patty & Joiner, R. F. Scott, Waples, Platter & Co., John P. Richardson, Buford, Porter & Co.

The court found the value of the goods seized under the several attachments and converted thereby to be $6300; that Cole's attachment consumed $1347.88 of said sum; Morgan's attachment, $2567.87; Goldsmith, Klaw & Co.'s attachment, $501.55; C. H. Gordon & Co.'s attachment, $260.20; Joseph Simon & Son's attachment, $356.20; thus finding that the valid attachments consumed the total sum of $5033.70 of said $6300. The court found for plaintiff the remainder of said $6300, amounting to $1266.30. The court found upon the issue of the compromises with Patty & Joiner and with R. F. Scott against plaintiff, that of $1266.30 aforesaid, Patty & Joiner's writ caused damage to the amount of $714.37, and R. F. Scott's writ caused damage to the amount of $551.93. The court thereupon found, as a conclusion of law, that plaintiff should take nothing by his suit against Morgan and Cole; that by reason of the compromises the judgments in favor of plaintiff against J. W. Evans and bondsmen for $1266.30 should be discharged by the finding that the damages occasioned by the attachments of said Patty & Joiner and R. F. Scott

amounted to the like sum of $1266.30.  There were a great many other findings of the court which it is not necessary to mention.

Upon the verdict of the jury and the findings of the court as aforesaid, a judgment was entered adjudging that plaintiff should take nothing as against R. B. Morgan and T. U. Cole, and pay all costs as against them; that plaintiff should recover of Evans and bondsmen $1266.30, with 6 per cent interest from October 15, 1888, and costs of suit; that defendant Evans should recover of R. F. Scott and indemnitors $551.93, with 6 per cent interest from October 15, 1888, and costs; that defendant Evans should recover of Patty & Joiner and their indemnitors $714.37, with 6 per cent interest from October 15, 1888; that the judgment therein rendered in favor of J. W. Evans against said Scott and sureties, and costs of suit, and against Patty & Joiner and sureties, and costs of suit, should be credited on plaintiff's judgments against Evans and bondsmen, and that said judgments should mutually discharge each other.  Plaintiff moved for new trial, filed exceptions to the findings of the court, etc., which being overruled, he has perfected this appeal.

The following facts were proved on the trial:

On October 15, 1888, Hall & Nicholson owned a stock of merchandise in their store in Honey Grove, worth $6300.  They at said date also owned about $1500 worth of other property.  They owed debts approximating $35,000, and were largely insolvent.  Among their creditors were appellees, T. U. Cole, cashier of the First National Bank of Honey Grove, and R. B. Morgan.  Hall & Nicholson desired to pay these two creditors in full.  They employed G. W. Wells, an attorney, to advise them how to take out the proceedings necessary for an assignment.  As to what passed between Wells and Hall & Nicholson in his advising them on this point, the evidence is conflicting.  But two witnesses testified on these points, and they do not agree.  They are Wells and plaintiff, who was at the time an employe of Hall & Nicholson.

Taylor testified that on Sunday, two days before the assignment, witness, Hall, Nicholson, and Burrus Hall, bookkeeper of Hall & Nicholson, were together in Hall & Nicholson's store.  Witness was sent by Hall & Nicholson to G. W. Wells' residence to bring him to the store.  Wells came to the store.  Hall pulled out a deed of assignment and showed it to Wells, and asked him if it was all right.  Wells declared it was.  The deed was like the one offered to the jury.  Hall & Nicholson then spoke to Wells about their determination to make an assignment, and said they wanted to protect the First National Bank of Honey Grove and R. B. Morgan in the payment of their debts before completing the assignment.  Wells then explained to Hall & Nicholson that this could be done by preparing the papers for the assignment in blanks and holding back their complete execution until the bank and Morgan could attach on their debts, and then complete the assignment by delivering the deed of assignment.  Hall told Wells to see Cole, cashier of said bank, and Morgan about the arrangement.  Hall asked witness to act as assignee, which witness consented to do.  On next day witness was sent by Hall & Nicholson to

watch for Morgan, who lived about four miles in the country. Witness saw Morgan come into town in a trap, and delivered the message from Hall & Nicholson to go to Wells' office. Witness, on said Sunday, took the assignment bond furnished him by Hall & Nicholson, and filed it and turned it over to Hall & Nicholson. There was no time fixed on said Sunday for the levying of said attachments, or the execution of said assignment.

On the contrary, Wells testified: "I was not present in Hall & Nicholson's store on Sunday before October 15, 1888. Four or five days, and it might have been ten days, before October 15, 1888, Hall & Nicholson, through S. P. Nicholson, employed me to advise them how to make a general assignment and enjoined me to secrecy. I furnished them the form, and told them it was sufficient for their purpose. Nicholson paid me $50 for my said services. This was the only conversation I had with Nicholson about the matter before the assignment was made. Did not know that they desired to prefer Cole and Morgan; did not know that they owed Cole and Morgan until their claims were put into my hands for collection. Cole handed me his claim for collection between 4 and 5 o'clock p. m., October 15, 1888. Morgan gave me his claim for collection shortly before this hour on the same day. I did not tell Cole and Morgan of Hall & Nicholson's contemplating an assignment. I went to Bonham after fixing the papers for an attachment. I made the affidavit for the Cole attachment, and Morgan made the affidavit for his attachment."

Cole and Morgan both swore that they knew nothing about Hall & Nicholson contemplating an assignment prior to the levying of their attachments.

During the pendency of the suit, plaintiff's attorneys and the attorneys of defendants Patty & Joiner and R. F. Scott agreed on terms of compromise. By the compromise, R. F. Scott paid the attorneys for plaintiff $200 and Patty & Joiner $250; and it was agreed if plaintiff recovered judgment against defendant Evans and sureties, and said Evans and sureties recovered judgment over against said Scott and Patty & Joiner, plaintiff should credit on his judgment against Evans and sureties the amount of the judgment recovered by Evans and sureties against Scott and Patty & Joiner.

This compromise was pleaded by Scott and Patty & Joiner. Plaintiff replied to it in supplemental petition by plea of non est factum. On the trial the question of the authority of the attorneys to make the compromise was waived, and the question of the validity of said compromise was submitted to the court with the other issues involved therein limited to whether said compromises were reasonable and proper under the circumstances in which they were made.

The evidence upon this issue is as follows:

The sheriff started from Bonham to Honey Grove about 9 o'clock p. m. of October 15, 1888. He had with him four attachments against Hall & Nicholson to be levied on their stock of merchandise in their store in Honey Grove, to wit, one in favor of R. F. Scott, one in favor of Patty &

Joiner, one in favor of T. U. Cole, cashier, etc., and one in favor of R. B. Morgan. The sheriff was traveling very fast in a double buggy, with G. W. Wells accompanying him in the buggy, and representatives of Patty & Joiner and R. F. Scott following in another buggy. When they reached a point about five miles west of Honey Grove the sheriff's buggy ran into a fallen telegraph wire and was overturned. The sheriff was seriously injured. They finally repaired the wreck and proceeded on their trip to Honey Grove, but during this interval the sheriff handed the writs in favor of Scott and Patty & Joiner to their representatives, and he never got possession of either of them until after the deed of assignment had been executed and delivered to plaintiff and the sheriff was notified of the same by plaintiff. Notwithstanding the sheriff did not have these two writs in his possession, he went ahead and levied them, as he says, by making a memorandum of the levies on a slip of paper and transcribing the same in his returns on said writs. The returns of the sheriff on these two writs show that the writs were levied on the goods—Scott's writ at 11:37 p. m. October 15, 1888, and Patty & Joiner's writ at 11:38 p. m. on same day. All these facts are undisputed. The court instructed the jury that they must find these two levies invalid.

March 4, 1891, while this suit was pending, the said compromises were made without the knowledge or consent of plaintiff. He lived in Delta County. The compromise was made by R. B. Semple, attorney for plaintiff, and C. L. Galloway, attorney for Scott and Patty & Joiner. Plaintiff was not informed of the compromise until the August term, 1891, of said District Court, when he refused to ratify said compromises. Semple immediately informed Galloway of this fact and tendered him the $450, which he refused to take. The money was deposited in a local bank, and at all the trials of this cause since, including the one then pending, the $450 has been tendered the defendants Scott and Patty & Joiner, who refused to take the same.

Witness Semple testified that when he made the compromises he did not know that the attachments of Scott and Patty & Joiner were not in the possession of the sheriff, Evans, when he made the levies of those writs. Witness Galloway testified that he made the compromise with said Semple, representing Scott and Patty & Joiner in the same. Witness knew at the time that Evans did not have the writs of attachment of Scott and Patty & Joiner in his possession when he levied them.

The question of the power of the attorney Semple to make the compromises was waived by plaintiff, with the agreement of the parties that upon the issue of such compromises the evidence should be submitted to the jury with the other evidence in the case; that the decision of the issue should be made by the judge upon said evidence and upon the question whether said compromises were reasonable and proper under the circumstances attending the same under the laws and rules applicable to the trial of causes by the court. The question of the authority of the attorney of the plaintiff to make the compromise was by said agreement eliminated from the decision. This agreement was signed by plaintiff himself.

The court decided the compromises were reasonable and proper, and held plaintiff bound by them. The jury found the attachments of Joseph Simon & Son, of C. H. Gordon & Co., of R. B. Morgan, of T. U. Cole, cashier, etc., and of Goldsmith, Klaw & Co., were valid.

It was agreed that the value of the stock of goods of Hall & Nicholson when levied upon by J. W. Evans was $6300; that J. W. Evans was the duly qualified and acting sheriff of Fannin County on October 15, 1888, the date when said goods were levied upon; that he had entered into a bond as such sheriff in the sum of $5000, conditioned as required by law, and signed by Charles Davis, M. Rosenbaum, John Sparger, and John E. Pope, as sureties; that said Davis and Pope died since the institution of this suit, etc.; that the following parties brought suits against Hall & Nicholson, sued out attachments, and obtained judgments foreclosing their attachment liens on said stock of goods, to wit: R. B. Morgan for $1767.92, clerk's cost $7.40; T. U. Cole, cashier, for $1306, clerk's cost $7.40; Patty & Joiner for $757.60, clerk's cost $8.05; R. F. Scott for $575.60, clerk's cost $8.05; Goldsmith, Klaw & Co. for $460, clerk's cost $7.85; C. H. Gordon & Co. for $219, clerk's cost $7.50; Buford, Porter & Co. for $1752.45; John P. Richardson for $1573.05, clerk's cost $7.50; Joseph Simon & Son for $315, clerk's cost $7.50; Waples, Platter & Co. for $501.47.

That said stock of goods was sold under the order of the court, as perishable property, on November 3, 1888, by J. W. Evans, as sheriff, for $6300 cash, and after deducting $1047.20, he deposited the balance, $5252.80, with the clerk of the court; that said clerk paid out as follows said $5252.80: On said R. F. Scott judgment, $575.60, and clerk's cost $8.05, total $583.65; on said Patty & Joiner judgment $757.30, and clerk's cost $8.05, total $765.35; on said R. B. Morgan judgment $1767.92, and clerk's cost $7.40, total $1775.32; on said T. U. Cole judgment $1306.78, and clerk's cost $7.40, total $1314.18; on said Goldsmith, Klaw & Co. judgment $460, and clerk's cost $7.85, total $467.85; on said C. H. Gordon & Co. judgment $208.60; on said Joseph Simon & Co. judgment $133.75.

It was agreed that J. W. Evans, as sheriff, took indemnity bonds from the attaching creditors of Hall & Nicholson, who have been made parties to this suit, as shown by his answer.

It was agreed that Hall & Nicholson made an assignment on October 15, 1888, to Green B. Taylor, as assignee, and that he qualified as such on November 16, 1888, and that plaintiffs T. U. Cole, cashier, etc., R. B. Morgan, Patty & Joiner, R. F. Scott, Joseph Simon & Son, Goldsmith, Klaw & Co., and C. H. Gordon & Co., sued on their respective claims on October 15, 1888, procured attachments to cover the amount of their respective debts, which were levied on the Hall & Nicholson stock of goods, and the levies were indorsed by said Evans on said attachments on October 15, 1888, and all the other attachments issued and levied on said stock of goods were issued and levied after October 15, 1888.

The court found that $1266.30 was the amount left after deducting the valid attachments and costs. The jury found that the attachments of

C. H. Gordon & Co., and of Joseph Simon & Son, were valid attachments. Gordon's judgment foreclosing his attachment lien and the clerk's cost amounted to $226.50; Simon's judgment foreclosing his lien and the clerk's cost amounted to $322.50. These judgments were valid liens on the Hall & Nicholson stock of goods, but the plaintiffs therein did not get the full amount of their respective judgments. Gordon received $208.60, and Simon & Son $133.75, making $342.35. They had valid attachment liens on said stock of goods to the amount of $549. The court in its findings deducted the amount of Simon's and Gordon's judgments, to wit, $549, the full amount they were entitled to, instead of $342.35, the amount they both received. Morgan received $1775.32, Cole $1314.18, Goldsmith, Klaw & Co. $467.85; Gordon and Simon were entitled to $549, making $4106.35.

The court, in addition, found that Evans, as sheriff, was entitled to costs, expense, etc., in the Morgan case of $792.55, and to $33.70 each in the other four valid attachments of Cole, Goldsmith, Klaw & Co., C. H. Gordon & Co., and Joseph Simon & Son, aggregating $927.35; which, added to the $4106.35, makes $5033.70; which, subtracted from the $6300—the admitted value of the stock of goods—would leave $1266.30, the exact amount of the court's finding.

So far as we deem it necessary to file conclusions of fact, we give such conclusions in connection with the assignments of error presented to us for consideration and decision.

The first assignment of error presented urges that the court erred in its charge in instructing the jury that, if Cole and Morgan, at the time of the levy of their respective attachments, had no notice that Hall & Nicholson contemplated making an assignment, and were delaying the delivery of the deed thereof in order that Cole and Morgan might obtain a preference by their attachments, then no knowledge or notice acquired by G. W. Wells, their attorney, prior to his employment by them to collect their debts, for which the goods were attached, could have the effect to render such attachments fraudulent and invalid. The complaint is that the court charged that knowledge acquired by Wells, the attorney, previous to his employment by the attaching creditors, would not be chargeable to such attaching creditors.

The uncontroverted evidence conclusively shows that Cole and Morgan had no actual knowledge of any intention on the part of Hall & Nicholson to prefer them as creditors by delaying the execution of their assignment until attachments were run to secure their respective debts. There is no evidence showing that Cole and Morgan had notice of any facts which should have put them upon notice of such fraudulent intent on the part of Hall & Nicholson. The evidence was sufficient to show, though there was a conflict upon the point, that Wells, the attorney of Cole and Morgan, had no knowledge of any such intention on the part of Hall & Nicholson, and had no notice of facts which should have put him on notice of such fraudulent intention. Wells himself swore that he was employed by Hall & Nicholson to advise them how to make a

statutory assignment; that he gave them a form for such assignment; and that they paid him for his services the sum of $50. He says that he was not informed of any intention to prefer Cole and Morgan, and that he did not know that Hall & Nicholson owed Cole and Morgan, until their claims were afterward placed in his hands by Cole and Morgan for collection. He says he did not inform Cole and Morgan of such intention on the part of Hall & Nicholson, because he knew of no such intention himself. He denies absolutely that he was informed that Hall & Nicholson had any other intention than a fair compliance with the law governing statutory assignments. On the other hand, the assignee, Taylor, swore that Hall & Nicholson informed Wells of their desire to prefer Cole and Morgan, and that Wells advised the scheme of delaying the execution of the assignment until Cole and Morgan could run attachments, and that it was arranged for Wells to communicate the facts to Cole and Morgan in order that they might run their attachments.

Under this state of the proof, the court charged the jury that the knowledge of the attorney Wells, acquired prior to his employment by Cole and Morgan, would not be chargeable to Cole and Morgan, unless such matter was again brought to the mind of such attorney after his employment by Cole and Morgan, and prior to the running of the attachments. The proposition announced in the charge is fully sustained in the cases of Loan Agency v. Taylor, 88 Texas, 47-49; Kaufman v. Robey, 60 Texas, 399.

The charge on this point is thought to be in conflict with the decision rendered in this case upon the former appeal, reported in 29 Southwestern Reporter, 172. The portion of the opinion in that case thought to be in conflict with the charge of the court appears to have been a discussion of an assignment based upon the refusal of a special charge, to the effect "that if Hall & Nicholson, in contemplation of making a general assignment, with the view of preferring Morgan and Cole, delayed the execution of the deed to enable Morgan and Cole to levy their attachments prior to the execution of such deed, and this was communicated to Wells previous to his employment by Cole and Morgan, and so recently that it might be reasonably presumed to be present in his mind while he was engaged in said employment, it would not be a breach of professional confidence for Wells to communicate said information to Cole and Morgan."

We held that the proposition involved in the special charge was correct, namely, that communication by a client to his attorney of an intent to violate the insolvency law by permitting certain preferences and preferring certain creditors, is not entitled to protection as confidential. This holding we still believe to be correct, and we think a proper disposition was made of the former appeal.

In discussing the question raised by the assignment of error, the judge, in the concluding paragraph of the opinion upon that subject, said: "It would not have been a breach of professional confidence for said attorney

to have disclosed such information to his clients, Cole and Morgan, and they would be chargeable with knowledge of the information possessed by their said attorney." The last clause, "they would be chargeable with knowledge of the information possessed by their said attorney," should not have been used, and conveys an erroneous impression. The entire charge of the court upon the last trial upon this branch of the subject was full and fair, and the plaintiff has no ground of complaint against it.

The next assignment of error presented complains of the charge of the court upon the subject of notice, claiming that the charge excluded from the consideration of the jury actual notice, and that the definition of constructive notice was erroneous.

We here give such portions of the charge of the court as will throw light upon this assignment of error:

"7. Upon the issue of fraud, you are instructed that if you believe from the evidence that Hall & Nicholson contemplated making the deed of assignment for the benefit of their creditors, and that they purposely delayed the delivery of the same in order that T. U. Cole might procure and levy his attachment, and thereby obtain a preference over other creditors, then I instruct you that if T. U. Cole, prior to the levy of his attachment, knew or had notice of such intent and purpose of Hall & Nicholson in thus delaying the delivery of said deed of assignment, or if you find that G. W. Wells while employed by and acting as attorney of T. U. Cole in the mattter of collecting Cole's debt or procuring and levying his attachment, obtained knowledge or notice of such intent and purposes on the part of Hall & Nicholson in thus delaying the delivery of said deed of assignment, you will in such case find said T. U. Cole's attachment to be fraudulent and invalid."

This section of the charge is in substance repeated in section 8, and applied to the attaching creditor Morgan.

"9. By the term 'notice' as used in this charge is meant a knowledge of such facts or circumstances as would have put a person of ordinary prudence upon inquiry, and have thus led him to the knowledge that Hall & Nicholson contemplated making an assignment, and were delaying the same in order that the attachments of Cole and Morgan might be procured and levied, and thereby a preference gained over other creditors. In this connection, you are instructed that the mere knowledge or notice on the part of Cole and Morgan, or Wells, or of all three of them (if they had such knowledge or notice), of the mere fact alone (if it was a fact) that Hall & Nicholson contemplated making an assignment for the benefit of their creditors, would not be sufficient to invalidate their attachments. In order to have that effect such knowledge or notice must have been not only that Hall & Nicholson contemplated such assignment, but also that they were purposely delaying the delivery of the same in order that the said Cole and Morgan might secure a preference over other creditors by procuring and levying attachments on their stock of goods.

"10. If Cole and Morgan, at the time their respective attachments were procured and levied, had no knowledge or notice that Hall & Nichol-

son contemplated an assignment, and were delaying the delivery thereof in order that Cole and Morgan might obtain a preference by their attachments, no knowledge or notice acquired by Wells prior to his employment by Cole and Morgan to collect the respective debts for which they attached the goods (if he acquired such prior knowledge or notice) could have the effect to render such attachments fraudulent and invalid, but if said Wells acquired such knowledge or notice prior to his said employment, and if he again came into possession of such knowledge or notice after said employment, his knowledge or notice acquired after his employment would be chargeable to his client and invalidate his attachment, notwithstanding the fact (if it was a fact) that he also had such knowledge or notice before he was employed."

We do not think the charge of the court is subject to the criticism here urged against it. The definition of constructive notice is correct, and the question of actual notice was fairly submitted. If, however, the charge should not have submitted the question of actual notice on the part of Cole and Morgan, it would not have been reversible error, for the reason that the evidence conclusively showed that there was no actual notice on the part of Cole and Morgan of any fraudulent purpose entertained by Hall & Nicholson to prefer their debts by means of writs of attachment.

Appellant next complains in relation to the Cole and Morgan attachments, that the court erred in refusing to grant a new trial, upon the ground that the verdict and judgment are contrary to the evidence. This assignment is based upon the idea that sufficient facts were brought to the attention of Wells, after his employment by Cole and Morgan, to give him notice of the fraudulent intent of Hall & Nicholson to prefer Cole and Morgan by means of their attachments. The assignment of error is not sustained by the record. The evidence fully warranted the jury in finding the contrary of this proposition.

There are no other assignments of error urged which relate to the Cole and Morgan branch of the case.

It is further urged by appellant that the court erred in charging the jury that there was no evidence that J. W. Evans, sheriff, knew of or participated in any fraud in said case, and that they should not find any of the attachments invalid by reason of any fraud or knowledge of fraud charged against him in the pleading. The evidence was uncontroverted and conclusive to the effect that the sheriff only acted in the discharge of his duty, and knew nothing whatever of the fraudulent intent of Hall & Nicholson; and the court did not err in this part of its charge.

The eighth assignment attacks the correctness of the finding of the court as to the amount which plaintiff would be entitled to recover. This assignment has reference to that branch of the case connected with the attachments of Patty & Joiner and R. F. Scott. Upon an examination of the evidence and calculations made by the trial judge, we find no error in the conclusions of fact upon this point.

Appellant also insists that the court erred in its finding that the compromises made between plaintiff and the attaching creditors, Patty & Joiner and R. F. Scott, were reasonable and proper, and in rendering judgment accordingly. The only question submitted to the court on the compromises previously made with the two attaching creditors Patty & Joiner and R. F. Scott was as to whether such compromises were reasonable under the circumstances under which they were made. The defense previously urged, of want of authority in the attorneys to make such compromises, was withdrawn; and the issue of reasonableness was all that was left for the court to pass upon. We can not say, from the evidence, that the court reached an incorrect conclusion upon this issue. The evidence justified the conclusion that the compromises were reasonable.

No other assignments are presented for our consideration.

There were really only two issues of fact submitted, namely:

1. Did Cole and Morgan have notice of the fraudulent intent on the part of Hall & Nicholson to prefer their claims by attachments? This issue the jury correctly determined in the negative.

2. Were the compromises made with the attaching creditors Patty & Joiner and R. F. Scott reasonable? The evidence was sufficient to justify the court in reaching an affirmative conclusion upon this issue.

We find no errors committed upon the trial, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.